# 𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫.

## W. O'QUINN V. HAZEL LAND CORPORATION, ET AL.

September 22, 1921.

Absent, Prentis and Burks JJ.

1. JUDICIAL SALES—*Agreement by Debtor to Save Purchaser Harmless—Purchaser's Right to Reimbursement from Proceeds of Other Sales in Same Cause.*—Petitioner, purchaser of land sold by order of court in creditor's suits, defaulted, and upon resale paid the deficiency. Between the sale to petitioner and the resale the H. Company bought other land from the debtor, which was afterwards sold to satisfy creditors in the aforesaid suits. After the creditors were satisfied there was a balance remaining ·from the sale of the H. Company tract which petitioner claimed on the ground that he was a surety for the debtor and had been induced by the debtor to make the purchase on which he defaulted by representations that the debtor would sell his other lands to pay all his debts and protect petitioner from loss incurred through his bid. The H. Company had no notice of the alleged relationship of petitioner as surety for the debtor or of this agreement.

   *Held:* That if petitioner had any recourse, it was against the debtor and not against the balance remaining from the sale of the land purchased by the H. Company.

2. JUDICIAL SALES—*Lis Pendens—Order of Subjecting Lands Aliened by Debtor.*—Where creditor's suits are pending and the debtor aliens different parcels of land, the first to be aliened are the last to be subjected to his debts.

Appeal from a decree of the Circuit Court of Dickenson county on petition of purchaser at a judicial sale. From a decree dismissing the petition, petitioner appeals.

*Affirmed.*

The opinion states the case.

*W. B. Phipps* and *S. H. & G. C. Sutherland,* for the appellant.

*Chase & McCoy* and *Harman & Pobst,* for the appellees.

KELLY, P., delivered the opinion of the court.

This is an appeal from a decree sustaining a demurrer to a petition interposed by W. O'Quinn in several lien creditors' suits against one J. P. Laforce and others.

Laforce owned a number of tracts of land, some of which were encumbered by deeds of trust and all of which were subject to the liens of sundry judgments against him. Numerous suits were brought from time to time, all of which were finally heard together, for the purpose of enforcing the liens aforesaid against the Laforce lands. There was a report of the liens by a commissioner and a judicial sale ordered, at which six certain tracts of land owned by Laforce (being only a portion of his real estate) were purchased by W. O'Quinn at the aggregate price of $3,160, for which he gave his notes with personal surety payable in one, two and three years. This sale was confirmed on condition that the costs and commissions should be paid within thirty days; otherwise, a new sale was to be made on the same terms as in the previous decree. It does not affirmatively appear from that portion of the record in the aforesaid chancery causes accompanying the petition now before us that this condition was ever complied with, but the clear inference is that it was, for the record in hand does disclose that the sale thereafter was dealt with by the court, the commissioner and the parties, including O'Quinn, as having been duly confirmed.

O'Quinn failed to pay his purchase money notes, and after due service of a rule against him and his sureties to show cause why the lands should not be resold at their risk,

a resale was ordered and made, which resulted in a loss or deficit of $1,584.54 in the fund belonging to the creditors, for which a judgment was duly rendered against O'Quinn and his sureties, and afterwards paid in full by O'Quinn.

While the aforesaid suits were pending, but before there had been any decree of sale therein, J. P. Laforce sold and conveyed to Harrison Austin fifty-nine acres of land, and Austin thereafter conveyed a part thereof to W. J. Leftwich. This fifty-nine acres was affected by some of the judgments against Laforce, but having been among the first aliened by him, was, of course, to be among the last subjected to his debts. It was not one of the six tracts sold to O'Quinn.

Subsequently, but before the sale was made to O'Quinn, by decree of October 14, 1914, J. P. Laforce was permitted to convey to W. M. Ritter Lumber Company 139 acres of land involved in the litigation for $1,700, which sum was paid into court, and the liens as to the land thus sold and conveyed were transferred therefrom to the fund thus arising.

And between the date of the original sale to O'Quinn and the resale at his risk, J. N. Harman, trustee, acting on behalf of the Hazel Land Corporation, purchased from J. P. Laforce four tracts of land and one thousand standing trees, all of which were subject to some or all of the liens sought to be enforced in the aforesaid chancery suit, but none of which had been sold therein. It therefore appeared that at the time of the purchase by Harman for the Hazel Land Corporation there was a fund in court represented by the notes of O'Quinn and his surety for $3,160 available to owners of the liens sought to be enforced.

The proceeds of the lands sold to the W. M. Ritter Lumber Company and of the six tracts sold first to O'Quinn (and afterwards to another purchaser, with a judgment over against O'Quinn for the deficit), and of certain other lands sold in the cause but not necessary to be further referred

to herein, not being sufficient to pay all of the liens against the real estate owned by Laforce, the several causes were again referred to a commissioner to ascertain the other lands of Laforce not theretofore sold which were liable to the judgments and liens remaining unsatisfied. The commissioner reported among other things that a certain five-acre tract should be first sold; that the Hazel Land Corporation property should be next sold; that a certain one-acre tract should come next; that the Harrison Austin and W. J. Leftwich land should be sold as fourth in order of priority, and so on as to other tracts in the inverse order of their alienation by Laforce. This report was confirmed, and a sale ordered and made accordingly, but it was unnecessary to go beyond the Hazel Land Corporation tract to satisfy the liens. As a matter of fact it developed that the Hazel Land Corporation property (exclusive of the standing trees), which was bought by H. Claude Pobst at the price of $2,245, was more than sufficient to pay off all the liens, and there remained in the hands of the court a surplus fund of about $1,000 realized from the sale of the latter property. Thereupon O'Quinn filed his petition in which he prayed that he be awarded the $1,000 surplus, and that the unsold lands of J. P. Laforce and the Austin and Leftwich land and the one thousand trees aforesaid, owned by the Hazel Land Corporation, be sold "to reimburse petitioner."

This very remarkable claim on the part of appellant seeks a foundation in the following extract from the petition setting up the claim:

"Your petitioner would further state that before he bid at the sale by Special Commissioner Geo. C. Sutherland he was surety on the $475.00 judgment owing to T. G. Kiser, (a joint judgment against Laforce and O'Quinn), and as the lands of J. P. Laforce were being sold to satisfy that as well as other liens, your petitioner was anxious to see all of the said J. P. Laforce debts paid in order to save petitioner

harmless, and that before the sale of said tracts by Commissioner Sutherland in which petitioner became the purchaser, J. P. Laforce told petitioner to bid the land off for said amount and if petitioner would do so, he, J. P. Laforce, assured him that he, the said J. P. Laforce, would sell the other tracts of land owned by him, said J. P. Laforce, or execute deeds of trust, as well as on other property, and if necessary, the tracts which were sold by Special Commissioner Sutherland and bid in by this petitioner, and from the money thus realized by deeds of trust or other sales, the said J. P. Laforce would pay off all the debts and the notes executed by this petitioner to said Commissioner Sutherland. This petitioner would also state that he knew, and was fully aware, the said J. P. Laforce owned other lands, and petitioner was willing that the said J. P. Laforce should take all of his lands (that which was unsold as well as the portion being sold by Commissioner Sutherland) and sell the same, or obtain the money by deeds of trust or otherwise, and pay off and discharge all of the judgments, including the one to T. G. Kiser, for which petitioner was surety, and also pay and satisfy the notes which petitioner executed to Commissioner Sutherland for the lands bid in by him. Petitioner also knew that the lands were of sufficient value to enable the said J. P. Laforce to sell the same and discharge all the judgments and liens against the same, including the notes executed by petitioner to Commissioner Sutherland and relying upon the representation and statements of said J. P. Laforce that he would sell all, or such amount of his lands as would discharge all liens against the same, and the notes executed by this petitioner to Commissioner Sutherland, your petitioner made the said bids at the sale by the said Commissioner Sutherland; and that he would not have made said bids and executed said notes had it not been for the representations made by the said J. P. Laforce; for this was the inducing

cause and motive. And petitioner would further state that after said notes were executed to Commissioner Sutherland, and after the rule was served upon him and his sureties, the said J. P. Laforce still assured this petitioner that he would, in the manner he had represented, pay off and discharge the liens as well as the notes executed by petitioner to Commissioner Sutherland, and assured this petitioner that he need not give the matter any notice or concern, thereby lulled this petitioner into a sense of security, which caused him not to attend the other sales of the lands afterwards made in these causes."

To the foregoing petition the Hazel Land Corporation, Harrison Austin and W. J. Leftwich demurred upon several grounds, among which were the following:

"(2) That the alleged agreement between O'Quinn and Laforce was a private matter in which the demurrants were not interested.

"(3) That the purchase by W. O'Quinn of the six tracts of land at the judicial sale for $3,160.00 was a new and independent obligation on his part to the court, and any loss suffered by him thereunder is his individual loss, and cannot be asserted against the lands of demurrants; that O'Quinn simply had the verbal promise of J. P. Laforce to make sale of his lands, or borrow the money thereon, and pay off his own indebtedness and also pay the notes which O'Quinn executed to the court for the six tracts purchased at the judicial sale for $3,160.00, and that such agreement would not give a lien on any lands of J. P. Laforce, or give him the right of subrogation to the lien of any lien holder, or prevent J. P. Laforce from selling his lands.

"(4)    *   *   *   That even if such an agreement should place an obligation on Laforce to reimburse O'Quinn for the $3,160.00 bid by O'Quinn at the judicial sale of the six tracts of land, it would be an open account of O'Quinn against Laforce, without lien or equity of any kind; and

that in no event would such an agreement affect the lands of demurrants."

The court sustained the demurrers, dismissed the petition as to the Hazel Land Corporation and Austin and Leftwich, directed that the $1,000 surplus realized from the sale of the Hazel Land Corporation's land be paid over to it, and provided that process should issue upon the petition against J. P. Laforce if the petitioner should so request. It is from this decree that the present appeal was allowed.

[1] The foregoing statement of the case is greatly abridged from the account thereof contained in the petition upon which the decree complained of was rendered. The outline we have given, however, embraces all the facts appearing in the petition which are essential to a proper decision of the controversy; and from that outline it is manifest that there is no error in the decree to the prejudice of the appellant. To state the case is to decide it. The relief sought by O'Quinn was based upon his alleged relationship as surety for Laforce. If this relationship existed, except as to the $475 judgment against him and Laforce, it arose from the verbal agreement set out in the petition and quoted above. Neither as to the judgment nor as to the agreement did the Hazel Land Corporation have any notice of the alleged relationship of surety on O'Quinn's part. He became a purchaser just as any other stranger might have done, and raised none of the questions which he is now raising until after his own default had been in large measure the cause of the situation of which he here complains. He gave his obligations in a new and independent contract with the court, failed to meet these obligations or to show any reason why he should not do so, and permitted the lands to be resold at his risk with a resulting loss. If he has any recourse, it is against Laforce, and this recourse was expressly offered to him by the decree complained of.

[2] As to the Austin and Leftwich lands, it is sufficient to say that there is no possible view of the case in which O'Quinn can justly ask that they be sold for his benefit. They were among the first of the lands to be aliened by Laforce, and the proceeds of other lands liable in advance of the former fully satisfied the liens sought to be enforced.

The decree complained of is affirmed.

*Affirmed.*